# C. J. Jessop *v.* R. B. Ivory, Appellant.

*Contracts—Evidence—Question for jury.*

Where a contract in writing is not produced at the trial, and secondary evidence of its contents is given, the question as to what was the written contract between the parties, and whether any part had been omitted from the writing, by fraud, accident or mistake, is for the jury.

*Contracts—Receipts signed by one party—Parol evidence to vary written instrument.*

The rule as to the modification of written agreements by parol evidence does not apply to a mere receipt signed by one of the parties.

*Change of venue—Discretion of court—Review.*

The refusal of a change of venue is not reviewable by the Supreme Court except for abuse of discretion by the lower court.

Argued Oct. 14, 1895. Appeal, No. 51, Oct. T., 1895, by defendant, from judgment of C. P. Armstrong Co., March T., 1892, No. 126, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on written agreement. Before RAYBURN, P. J.

At the trial it appeared that in May, 1889, plaintiff purchased from defendant one hundred shares of the capital stock of the Rolled Steel Carriage Wheel Company. He paid therefor the sum of $1,000, taking defendant's receipt therefor.

Plaintiff testified that defendant made a special parol agreement to repay plaintiff the purchase money with interest on demand, at any time plaintiff became dissatisfied with the stock. Plaintiff averred that in July, 1889, he became dissatisfied with the stock, offered to return the same, and demanded repayment of his money, which was refused. Defendant denied that he had made any such agreement, and claimed that the only condition upon which plaintiff was to have a return of his money was embraced in the receipt given to the plaintiff at the time the

money was paid, which was that the money should be repaid in case a patent which had been applied for was not obtained. He also claimed that even if such an agreement had been made in plaintiff's favor he had waived it.

The court charged in part as follows:

The issue that you are now trying is framed between Charles J. Jessop, the plaintiff, and R. B. Ivory, the defendant. The plaintiff seeks in this action to recover from the defendant one thousand dollars; and in support of his allegation in this case, he contends that at one time he purchased from the defendant a certificate of stock in the corporation known as the Rolled Steel Carriage Wheel Company. That at the time of the purchase of this stock, the contract or agreement between the plaintiff and the defendant was that, if at any time the plaintiff became dissatisfied with this certificate of stock, that the defendant would return to him, upon demand, the amount of money that the plaintiff paid to the defendant for this stock, together with interest thereon from the time of the demand.

Dr. Charles Jessop comes upon the witness stand and testifies in your hearing that a contract was made between him and Mr. Ivory; and to support him in the allegation some other witnesses are called, the first, I believe, being Walter Sturgeon, who testifies that he was present with Mr. Jessop at the office of the defendant at the time the arrangement or agreement was made to take the stock, and that the defendant there had said that he would do with Jessop the same that he had done with Sturgeon; that he would guarantee to refund the money at any time he became dissatisfied with the stock.

R. A. McCullough is called upon the stand on the part of the plaintiff; he testifies that he had several conversations with Mr. Ivory in reference to the sale of stock. That Mr. Ivory, the defendant, had requested him at different times to purchase stock, and that Ivory had said to McCullough that he had sold to Jessop and Sturgeon, and to Moesta, and that he had agreed to refund the money if they became dissatisfied with the stock, and that he had taken back Moesta's stock.

Now, on the part of the defendant as to the arrangement or contract, Mr. Ivory comes upon the stand and testifies that he did sell this stock to Dr. Jessop; that he gave to him a receipt for the money; that he gave him the stock. and that Dr. Jes-

sop gave him a check for a thousand dollars; he states that there was no agreement made between him and Dr. Jessop as to the guaranteeing the refunding of the money; that there was no agreement of that kind made; that he never agreed to refund this money upon Jessop becoming dissatisfied with the stock; that the only agreement that was made was that contained in a receipt that he gave to Dr. Jessop, that the money would be refunded if a patent was not procured for this steel wheel.

Mr. Gettleman, another witness, is called on the part of the defendant in reference to this arrangement, who testifies that he came to Kittaning from Ford City at the request of the plaintiff, Dr. Jessop, to examine the model, or part of the wheel that Mr. Ivory had in his office on exhibition; that he went there the first time in the afternoon; at that time Mr. Sturgeon and Dr. Jessop were with him, and that they were in and examined the wheel, and that they came out of the office and walked around; they finally came back to Ivory's office, and Ivory came in when they were there, and Mr. Sturgeon was not present at that time, but that they were in there some twenty or thirty minutes and examined the model, talked about it, its practicability and durability, and that the plaintiff, Dr. Jessop, when they were leaving the office, told the defendant, Ivory, to reserve a hundred shares of stock for him; he testifies that that there was no agreement that he heard, or arrangement made, that the money was to be returned for the price of this stock.

He also testifies that if there had been anything of that kind said at that time that he would have heard it; he states also that this was the only time that he was present when there was any conversation passing between Ivory, the defendant, and Jessop, the plaintiff.

Now, gentlemen, that is about the evidence on the part of the plaintiff and on the part of the defense in reference to this agreement of refunding the money. The defendant also contends that, even if this arrangement had been made to refund the money, the arrangement made between Jessop and Ivory for Ivory to refund the money upon Jessop becoming dissatisfied with the stock, that subsequent to that time there were acts of ownership over this stock exercised by the plaintiff, Jessop, that

that would be, or was an abandonment of the arrangement or agreement. You will remember that the plaintiff states that he took the certificate of stock and went to Mr. Ivory's house, and demanded the return of the money. Ivory states that Jessop was there at his house, but there was nothing said about the guaranteeing of the stock; he says that Jessop demanded his money at that time, and said if he would not get it he would expose the company.

[Now the evidence in reference to the contention of the defendant in this case as to the manner in which Jessop treated the stocks as to establish an ownership after this demand had been made of him, was a proxy that he gave S. B. Cochran to vote this stock at a stockholders' meeting where directors were to be elected, and a telegram that the plaintiff sent Ivory to Pittsburg to sell his stock, and a letter that was written by the plaintiff to the defendant at Pittsburg inquiring as to how the plant was getting along and how the stock was. Now as to the telegram that was sent, Jessop, the plaintiff, states that that telegram was sent at the request of Ivory, and that Ivory fixed the amount at which the stock was to be sold. Ivory says that he did not do that. The dispatch reads this wise : " Kittanning, Pa., January 13th, '90. R. B. Ivory, Dispatch Building, Pittsburg, Pa. : Sell my 100 shares of wheel stock at $15 per share." Now these exhibits of evidence, the proxy and the telegram, and the letter, are all to be taken into consideration by you in determining this case. We say to you that if the agreement, as alleged by the plaintiff, Jessop, was entered into at the time of the sale of this stock, that he was to have his money returned upon his becoming dissatisfied with it; if that is true in this case and there is nothing offered on the part of the defense to show a waiver of that or an abandonment of the contract by the plaintiff, the plaintiff would be entitled to recover. But we also say to you that the defendant, if he, by this proxy, telegram and letter, would show to you that he had exercised rights of ownership over this greater than would be required to maintain and keep himself safe in this matter, then that would be showing such ownership as would be an abandonment of the former contract, if there were one.] [4]

[The plaintiff testifies that at the time he paid to Ivory the money that he, Ivory, gave to him a receipt for the money.

That receipt is not before you, although the defendant has offered in evidence another receipt which he says is the form of the receipt that was given by him, and authorized to be given by him by the company upon the sale of this stock to any person. The form of the receipt was that the money was to be refunded upon the contingency of not procuring a patent for the steel wheel. Now, if that was the contract between the parties at that time, and that was the only contingency that existed in this contract between them as to the returning of the money, then it being in evidence before you that a patent had been procured for this wheel, the plaintiff could not recover in this case. That is the only contingency that was in the contract between them, because it is not disputed before you here but what a patent had been procured for the wheel.] [5]

The plaintiff testifies that he made the demand for this money some time in June, I think he testified to; and that he made a demand subsequent to that time. The defendant says that the demand was not made in June at all; that it was made in the latter part of December or the first part of January, and he fixes that, he says, as to the time he had sold his property; that he sold his property in December to Mr. Heilman, and that this meeting with Jessop, in his house—that is Ivory's house—occurred just a few days after that.

There has been some evidence offered here on the part of the plaintiff on the matter of contradiction as to the evidence of the defendant. The defendant was asked whether or not he had stated to Mr. Heilman how he had sold this stock, and what was done with the money. The defendant says he never had any conversation of that kind with Mr. Heilman: You will recollect what the testimony was in reference to the sale of the stock and where the money went, and who was going to keep the plant running; that Ivory should have said to Heilman that they were making money out of it, and that the money received for the stock that each of them sold they had put down in their pockets, and the stockholders would have to look to the running of the plant. Mr. Ivory states that he had no such conversation as that.

Gentlemen of the jury, this is rather an important case and it will be your duty to take all this evidence into consideration in passing upon the rights between these parties, and it is your

province to pass upon the facts in the case, and to ascertain where the truth is in this case.    There seems to be a dispute as to the facts, and it is your province to reconcile this testimony and ascertain what the truth is in the case.

As to the question of ownership or acts of ownership alleged to have been exercised by the plaintiff as to this stock, we say to you that the law in reference to that is, that if the jury would find the contract sued on, the tender of the stock in rescission, and the refusal of the defendant to accept it, then the plaintiff had the right to do any acts in regard to the stock, reasonably necessary to protect his interests, and at the same time to maintain his claim to rescind, but on the other hand the acts alleged, the direction to sell the stock, the giving of a proxy to cast his vote, and his personal attendance and participation in the business of the stockholders' meeting, were prima facie acts of ownership inconsistent with the demand for rescission, and therefore the jury are at liberty to infer from them an acquiescence in defendant's refusal and an abandonment or waiver of such demand.

Defendant's point, among others, was as follows:

15. That under all the evidence in the case the verdict of the jury must be for the defendant.    *Answer:* That point is refused. [1]

Prior to the trial the court discharged a rule for change of venue. [7]

Verdict and judgment for plaintiff for $1,325.66.    Defendant appealed.

*Errors assigned*, among others, were (1, 4, 5) above instructions, quoting them; (7) refusal of change of venue.

*J. M. Hunter, J. B. Neale* and *J. H. Painter* with him, for appellant.—The plaintiff based his right to recover upon a parol agreement.    It was proper, therefore, for the court to admit his proofs in support of that agreement.    When, however, it developed that the agreement had been reduced to writing, which writing had been lost or mislaid by the plaintiff, and could not be produced, and when the defendant had proven the contents thereof by competent testimony which was uncontradicted, it became the duty of the court: 1st, to withdraw all the evidence

of the parol agreement from the jury, and to direct a verdict for the defendant; or 2d, to withdraw all the evidence in relation to the parol agreement from the jury unless the plaintiff had satisfied the court that the parol terms had been omitted from the written agreement through fraud, accident or mistake: Diehl v. Emig, 65 Pa. 320; Irwin v. Irwin, 34 Pa. 525; Burr v. Kase, 36 W. N. C. 284; Penn. R. R. v. Werner, 89 Pa. 64; McFall v. Ice Co., 123 Pa. 253; Horn v. Hutchinson, 163 Pa. 435; Bank v. R. R., 163 Pa. 467; Jenks v. Fulmer, 160 Pa. 527; Freedman v. Fire Assn., 36 W. N. C. 353; Bayer v. Walsh, 166 Pa. 38; Gibson v. R. R., 164 Pa. 142; Gower v. Sterner, 2 Wh. 74; Clark v. Partridge, 2 Pa. 13; Renshaw v. Gans, 7 Pa. 117; Hunter v. McHose, 100 Pa. 38; Merriman v. Bush, 116 Pa. 276; Gower v. Sterner, 2 Wh. 74; Miller v. Smith, 33 Pa. 386; Stein v. Sherk, 1 W. & S. 195; Martin v. Berens, 67 Pa. 459; Penna. R. R. v. Shay, 82 Pa. 203; Cummins v. Hurlbutt, 92 Pa. 168; Cullmans v. Lindsay, 114 Pa. 166; Phillips v. Meily, 106 Pa. 536; McClain v. Smith, 158 Pa. 49; Juniata Bldg. Assn. v. Hetzel, 103 Pa. 507; Bown v. Morange, 108 Pa. 69; Thomas & Sons v. Loose, 114 Pa. 35; Sylvius v. Kosek, 117 Pa. 67; Jackson v. Payne, 114 Pa. 79; Thorne, McFarlane & Co. v. Wharfflein, 100 Pa. 519; Harbold v. Kuster, 44 Pa. 392; Martin v. Berens, 67 Pa. 459; Hoffman v. R. R., 157 Pa. 174; Baugh v. White, 161 Pa. 632; Jessop v. Ivory, 158 Pa. 71; Wodock v. Robinson, 148 Pa. 503; Rearick v. Rearick, 15 Pa. 66; Sartwell v. Wilcox, 20 Pa. 117; Lower v. Clement, 25 Pa. 63; Silvens v. Porter, 72 Pa. 448; Cauffman v. Long, 82 Pa. 80.; Spear v. P. W. & B. R. R., 119 Pa. 61; Holland v. Kindregan, 155 Pa. 156; 2 Rice on Evidence, 1260.

*M. F. Leason*, for appellee.—The receipt relied on is not a contract inter partes. The authorities cited by appellant refer to contracts where parties deliberately reduce their agreements to writing, and sign the same. But this doctrine never referred to receipts, due bills, bills of lading and other papers not expressed to receive careful consideration at the time by the parties: Graver v. Scott, 80 Pa. 88; Barnhart v. Riddle, 29 Pa. 92; Miller v. Fichthorn, 31 Pa. 252; Chalfant v. Williams, 35 Pa. 212; Powelton Coal Co. v. McShain, 75 Pa. 238.

A receipted bill of parcels shows the fact of sale and payment, but does not exclude evidence of oral warranty: Miller v. Mechlin, 3 Pa. 261.

The jury believed that the refunding part of the receipt set up by Ivory and the certificate of stock dated May 11, 1889, for the first time produced upon this trial by Ivory, were manufactured for the purposes of a defense and properly found the evidence false: Jones v. Patterson, 1 W. & S. 324.

The receipt was but a part of the transaction, and receipts are open to explanation by parol evidence of what occurred at the time between the parties, and of the circumstances and conditions under which they were given: Wolf v. Philadelphia, 105 Pa. 25; Batdorf v. Albert, 59 Pa. 59; Horton's App., 38 Pa. 294; Megargel v. Megargel, 105 Pa. 475; Dutton v. Tilden, 13 Pa. 45; Campbell v. McClenachan, 6 S. & R. 171.

Parol evidence may be given of what passed between the parties at, and immediately before, the execution of a written instrument, where the verbal promise, made by one party, induced the other to execute the instrument: Mackey v. Brownfield, 13 S. & R. 239; Oliver v. Oliver, 4 R. 141; Powelton Coal Co. v. McShain, 75 Pa. 238: Bown v. Morange, 108 Pa. 74; Walker v. France, 112 Pa. 203; Baltimore & Phila. Steamboat Co. v. Brown, 54 Pa. 77; Gue v. Kline & Reifsnyder, 13 Pa. 60; Shughart v. Moore, 78 Pa. 469.

The court patiently heard the application for a change of venue and in the exercise of its judicial discretion decided the case according to the weight of the evidence: Felts v. R. R., 160 Pa. 503.

OPINION BY MR. JUSTICE MITCHELL, November 4, 1895:

The main contention of appellant that the jury should have been directed to find a verdict in his favor, was decided adversely to him when the case was here before, 158 Pa. 71. The plaintiff's action was upon a parol agreement to take back the stock and refund the price paid if the purchaser should become dissatisfied, and desire to rescind. The defense was a denial of the contract set up, and in corroboration of that denial, an averment that the contract was in writing and contained the only condition on which it was to be rescinded. This paper was not produced but appellant gave evidence of its contents.

The question was therefore necessarily for the jury to decide whether the real contract was as the plaintiff or as the appellant claimed. When the case was here before we were obliged to hold that the court below had not given the writing its proper weight in putting it before the jury, but we said clearly that it was a matter for the jury, with instructions that the writing is presumed to contain the whole contract between the parties, and they must so find unless satisfied by clear and convincing evidence that another part of the agreement was in fact made at the time but omitted from the writing by fraud, accident or mistake. The learned judge gave this instruction to the jury by the affirmance of defendant's fourth point. He could not have gone further and directed for the defendant, because the writing not being in evidence the burden of proving its contents was on the defendant, and his testimony on that subject was inferentially if not expressly denied by the plaintiff. In this class of cases it is common experience that the lay mind takes a different view from the legal one. Juries nearly always give more weight to the words of the living witness before them, than they do to the writings made even by the same witness at another time. It is quite probable that in the present case the verdict was against the weight of the evidence, but it was a question for the jury, they were rightly instructed as to the law, and the correctness of their verdict was for the court below, not for us, to determine.

On the present argument the learned counsel for the appellee called our attention to the fact that the writing in question was not an agreement signed by the parties, but merely a receipt by the defendant, and therefore the rule as to the modification of written agreements by parol evidence, should not apply. The distinction is well founded, and if the verdict had gone the other way we should probably be obliged to hold in favor of the appellee that the rule was laid down too strictly against him. But the substance of the charge, that the writing, when admitted or proved, is presumed to contain the whole agreement of the parties, was entirely correct, and if the requirements of the evidence to overcome the presumption were stated too strongly it was an error in appellant's favor which affords him no just ground of complaint.

The other branch of the defense, that even if the contract

was as plaintiff claimed, he had waived his rights by acts of ownership subsequent to the alleged breach, was fully discussed when the case was here before, and the learned judge appears to have followed the opinion of this court closely in his charge and his answers to the points.

The refusal of a change of venue is not reviewable except for abuse of discretion of which there is not the slightest hint here : Felts v. R. R. Co., 160 Pa. 503.

Judgment affirmed.