J-A19009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BECKY REEVER AND JAMES REEVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| LANCASTER COUNTY MOTORS, | : | |
| LANCASTER COUNTY MOTORS, INC., | : | |
| LANCASTER COUNTY MOTORS | : | |
| SUBARU, BARBARA RABIEGA, | : | |
| BARBARA SIEGER, BARBARA | : | |
| RABIEGA-SIEGER, BARB RABIEGA, | : | |
| BARB SIEGER, AND BARB RABIEGA- | : | |
| SIEGER | : | |
| | : | |
| Appellees | : | No. 1816 MDA 2017 |

Appeal from the Judgment Entered October 25, 2017
In the Court of Common Pleas of Lancaster County
Civil Division at No(s):  CI-14-10068

BEFORE:  GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:          **FILED FEBRUARY 14, 2019**

Appellants, Becky Reever and James Reever, appeal from the judgment entered in the Lancaster County Court of Common Pleas, in favor of Appellees, Lancaster County Motors, Lancaster County Motors, Inc., Lancaster County Motors Subaru, Barbara Rabiega, Barbara Sieger, Barbara Rabiega-Sieger, Barb Rabiega, Barb Sieger, and Barb Rabiega-Sieger.  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellants raise the following issues for our review:

COULD THE IMPROPER CONDUCT AND IMPROPER STATEMENTS MADE BY THE TRIAL COURT TO THE JURY DISCOUNTING THE CREDIBILITY, RELIABILITY AND WEIGHT OF EVIDENCE HAVE BEEN PREJUDICIAL TO [APPELLANTS], THEREBY WARRANTING A NEW TRIAL?

GIVEN THE EXTENT OF THE TRIAL COURT'S IMPROPER CONDUCT AND IMPROPER STATEMENTS, WOULD ANY OBJECTION TO THE TRIAL COURT LIKELY HAVE BEEN INEFFECTIVE TO CURE…THE DAMAGE AND HAVE INTENSIFIED JUDICIAL ANIMOSITY, AGGRAVATED AND WORSENED THE SITUATION AS TO THE RELIABILITY OF THIS EVIDENCE, AND [APPELLANTS'] COUNSEL'S CREDIBILITY FOR USING THE SAME, THEREBY PRESERVING THE ISSUE FOR APPELLATE REVIEW?

(Appellants' Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Margaret C. Miller, we conclude Appellants' issues merit no relief. The trial court opinion comprehensively discusses and properly addresses the questions presented. (*See* Trial Court Opinion, filed January 26, 2018, at 6-25) (finding: **(2)** Appellants did not establish court spoke or behaved improperly; outside Appellants' bald and overstated assertions, record does not show timely objections to court's interjections would have had deleterious effect on jury or court or would have been meaningless at trial; Appellants' allegations of judicial misconduct are misrepresentations, exaggerated for post-trial proceedings, of common interactions between trial judge and counsel, which do not establish unprofessionalism; there is no evidence court expressed bias against Appellants or their counsel during trial; therefore, Appellants have

- 2 -

waived those issues which they did not raise during trial; **(1)** even if Appellants preserved their issues on appeal, they would not merit relief; period of time addressed in Interrogatory No. 41 does not align with period of time expressed in Appellants' question to Appellee Ms. Sieger at trial; Interrogatory No. 41 addressed conversations which occurred "from the time of the accident until the present," while Appellants' cross-examination addressed conversations which occurred from time of Appellants' arrival at dealership to time of alleged incident; Appellee Ms. Sieger's uncertainty as to whether she had post-incident conversations with Appellants does not impact truthfulness and accuracy of her testimony; thus, Appellants' claim of prejudice suffered at trial because trial court thwarted Appellants' ability to impeach Appellee Ms. Sieger's testimony fails; further, court's "interruption" of Appellants' cross-examination was merely attempt to clarify question being asked; at that point in Appellants' cross-examination of Appellee Ms. Sieger, matter was not whether she remembered what she answered in interrogatory, but whether she understood what interrogatory was generally; court's "interruption" of Appellants' questioning of Appellee Ms. Sieger was within court's discretion; concerning Appellees' objection to Appellants' asking Appellee Ms. Sieger if her lawyer signed her answers to interrogatories, Appellants' counsel reacted to objection stating, "That's fair"; thus, objection, which court did not expressly sustain, apparently was withdrawn; also, court did not demonstrate partiality or bias against Appellants when it told

Appellants' counsel to "move on" in examination after objection; regarding court's overruling Appellants' objection to question posed to Appellee Mrs. Sieger about query in her interrogatories, question was not leading question; so, even if objection should have been sustained, no prejudice resulted; concerning court's later interjection into Appellees' questioning of Appellee Mrs. Sieger about her responses to interrogatories, court was again attempting to clarify question being asked; court intended to remind counsel that lay witnesses are not aware of legal vernacular; additionally, court's statement was directed at Appellees' counsel, so statement does not relate to Appellants' counsel's credibility and motives).  The record supports the trial court's rationale, and we see no reason to disturb it.  Accordingly, we affirm based on the trial court's opinion.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/14/2019

Circulated 01/24/2019 02:38 PM

ENTERED AND FILED
PROTHONOTARY'S OFFICE
LANCASTER, PA
***Electronically Filed****
Jan 26 2018 08:25AM
Ryan McMinn

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CIVIL

BECKY REEVER *and* JAMES REEVER  :
    *Plaintiffs* :
     :
    *v.* : No.   CI-14-10068
     :
LANCASTER COUNTY MOTORS, :
LANCASTER COUNTY MOTORS, INC. :
LANCASTER COUNTY MOTORS SUBARU, :
BARBARA RABIEGA, BARBARA SIEGER, :
BARBARA RABIEGA-SIEGER, :
BARB RABIEGA, BARB SIEGER, :
BARB RABIEGA-SIEGER :
    *Defendants* :

## OPINION

BY:   MILLER, J.

Date:   January 26, 2018

This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

### BACKGROUND

The instant appeal arises from a civil complaint (the "Complaint") filed by Becky Reever and James Reever ("Plaintiffs" collectively, or "Plaintiff Becky Reever" and "Plaintiff James Reever" respectively) against Lancaster County Motors and Barbara Sieger ("Defendants" collectively, or "Defendant Motors" and "Defendant Sieger" respectively).[1] The Complaint alleges that, as the result

---

[1] Defendants include a Pennsylvania corporation with a registered office and/or principal place of business located at 5260 Main Street, East Petersburg, Lancaster County, Pennsylvania, and one of its employees.



of a negligent test drive conducted by Defendant Sieger, with Plaintiffs as passengers, at Defendant Motors place of business on November 5, 2012, Plaintiff Becky Reever suffered injuries, damages, and losses and Plaintiff James Reever suffered derivative damages and losses.

Following a jury trial held before this court from May 8, 2017, to May 10, 2017, a verdict was rendered in favor of Defendants, with the jury finding that Defendants were not negligent. On May 19, 2017, Plaintiffs filed a Motion for Post-Trial Relief ("Plaintiffs' Motion"), with Defendants Answer to Plaintiffs' Motion ("Defendants' Answer") following on May 26, 2017. On June 30, 2017, Plaintiffs filed a Brief in Support of its Motion ("Plaintiffs' Brief").[2] On July 21, 2017, Defendants filed a Memorandum of Law in Opposition to Plaintiffs' Motion ("Defendants' Memo") and on July 28, 2017, Plaintiffs filed a Reply Brief in Support of its Motion ("Plaintiffs' Reply Brief"). On October 25, 2017, Defendants filed a *praecipe* for entry of judgment pursuant to Pa. R.C.P. 227.4(1)(b)[3] with the Lancaster County Prothonotary's Office. At that time, judgment was entered in favor of Defendants pursuant to the jury verdict of May 10, 2017.[4]

On November 22, 2017, Plaintiffs filed Notice of Appeal to the Superior Court. On November 28, 2017, the court ordered Plaintiffs to file a concise statement of the errors complained of on appeal,

---

[2] The court notes that on June 5, 2017, it entered an Order directing Defendants to file a brief in support of their response to Plaintiffs' Motion. On June 8, 2017, Plaintiffs filed a Motion for Briefing Schedule, as well as a brief in support thereof, and on June 13, 2017, the court entered an Order approving Plaintiffs' proposed briefing schedule.

[3] Pa. R.C.P. 227.4(1)(b) states, "…the prothonotary shall, upon praecipe of a party enter judgment upon a nonsuit by the court, the verdict of a jury or the decision of a judge following a trial without a jury if one or more post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to the subparagraph shall be final as to all parties and all issues shall not be subject to reconsideration."

[4] On October 31, 2017, the Prothonotary's office gave Notice of Entry of Judgment pursuant to Pa. R.C.P. 237.

and directed Defendants to file an answer thereto. On December 13, 2017, Plaintiffs filed their Concise Statement of Errors Complained of on Appeal ("Plaintiffs' Concise Statement"). Defendants did not file an answer.

## DISCUSSION

Plaintiffs' Concise Statement begins with a lengthy brief-style explanation, before stating, "[t]he aforesaid statement of errors complained of on appeal is further categorized as follows," and listing fifteen enumerated paragraphs. Therein, Plaintiffs' Concise Statement reiterates the eleven issues included in Plaintiffs' Motion and raises two issues for the first time. Before discussing the merits of these claims, the court must consider whether any issues were waived.

### I. Whether the Issues Raised in Plaintiffs Concise Statement were Waived.

In addressing whether any issues were waived, the court will first consider whether Plaintiffs' Concise Statement was filed in accordance with Pa. R.A.P. 1925(b). Then, the court will consider whether the issues raised on appeal were properly preserved for appellate review, which requires it to discuss both the eleven issues initially raised in Plaintiffs' Motion and the two issues raised for the first time in Plaintiffs' Concise Statement.

### 1. Was Plaintiffs' Concise Statement filed in accordance with Pa. R.A.P. 1925?

"If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement")." Pa. R.A.P. 1925(b). Pursuant to Rule 1925(b)(4)(ii), "the Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to

identify all pertinent issues for the judge," but "[t]he Statement should not be redundant or provide lengthy explanations as to any error." Pa. R.A.P. 1925(b)(4)(ii), (iv). "Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver." Pa. R.A.P. 1925(b)(4)(iv). However, "[i]f the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms," and "[i]n such a case, the generality of the Statement will not be grounds for finding waiver." Pa. R.A.P. 1925(b)(4)(vi). Ultimately, "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa. R.A.P. 1925(b)(4)(vii).

While it fails to clarify the inclusion, the court infers that the initial seven pages of Plaintiffs' Concise Statement were included because Plaintiffs cannot readily discern the basis for the decision giving rise to the notice of appeal. However, the court has difficulty concluding that this is the type of preface contemplated, or permitted, by Rule 1925(b)(4)(vi). The rule addresses concise statements which only identify the errors complained of on appeal in general terms, and the preface is meant to explain why the ensuing statement fails to identify with sufficient detail the rulings or errors that the appellant intends to challenge.

Plaintiffs' Concise Statement begins with a verbatim reprinting of pages one through four and pages nine through twelve of Plaintiffs' Brief, before enumerating the thirteen issues Plaintiffs intend to challenge in great detail. Because its issues were not identified in general terms, Plaintiffs' Concise Statement required no explanation. By inserting what is essentially a veiled brief or memorandum of

law as a Rule 1925(b)(4)(vi) preface, Plaintiffs' Concise Statement violates the requirement that an appellant include neither lengthy explanations as to any error, nor a brief, with their concise statement. *See* Pa. R.A.P. 1925(b)(4)(ii), (iii). Moreover, the entirety of the statement, compared to the complexity of the claims, approaches the kind of volume which has troubled the Rule 1925(b) process in the past. While precedent and the rules make clear that the number of errors raised will not alone be grounds for finding waiver,[5] Plaintiffs' "further categoriz[ation]" of the issues is the type of redundancy which the rule seeks to avoid, and the overall lack of merit discussed *infra* verges on frivolity.

Because Plaintiffs' Concise Statement exceeds and/or misinterprets the intent of Rule 1925(b)(4)(vi), and includes brief-style support for repetitive, voluminous and potentially frivolous claims in an uncomplicated case, the court could conclude that none of Plaintiffs' issues have been raised in accordance with the provisions of Rule 1925(b)(4). However, the Pennsylvania Supreme Court "instruct[s] lower courts to address, on the merits, all issues raised in good faith," and notes that "[t]here is a presumption that an attorney licensed to practice law in this Commonwealth, who acts as an officer of the court system, has acted in good faith upon signing a document filed with the court." *Eiser*, 938 A.2d at 372, 384. Although, the *Eiser* court noted, "[i]n a rare case, like *Kanter*,[6] where a trial court concludes there was an attempt to thwart the appellate process by including an exceptionally large number of issues in a Rule 1925(b) statement, waiver may result," *id.*, such an attempt to thwart

---

[5] *See* Pa. R.A.P. 1925(b)(4)(iv); *see also Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417 (Pa. 2007) (the Pennsylvania Supreme Court clarified that "the number of issues raised in a Rule 1925 (b) statement does not, without more, provide a basis upon which to deny appellate review where an appeal otherwise complies with the mandates of appellate practice").

[6] *See Kanter v. Epstein*, 866 A.2d 394 (Pa. Super. 2004).

the appellate process is unlikely here because, unlike *Kanter*, which involved a defendant seeking to avoid increased damages and sanctions, the instant case is an appeal of a jury verdict against Plaintiffs, and thwarting the appellate process would serve them no purpose. Therefore, while critical of its brief-like preface and its numerous, lengthy issues, the court refrains from suggesting that Plaintiffs' Concise Statement is in such violation of Rule 1925(b)(4) that the issues raised therein should be deemed waived.

2. <u>Were the eleven issues raised in Plaintiffs' Motion properly preserved for post-trial review?</u>

"Except as otherwise provided by Pa. R.E. 103(a), post-trial relief may not be granted unless the grounds therefor, if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial and are specified in the motion." Pa. R.C.P. 227.1(b)(1), (2). Errors which could have been corrected during trial may not constitute a ground for post-trial relief unless timely objection was made. *See* Pa. R.C.P. 227.1(b)(1), Official Note. Additionally, the motion must state how the grounds were asserted at trial, and grounds not specified are deemed waived. *See* Pa. R.C.P. No. 227.1(b)(2).

The grounds upon which Plaintiffs' first eleven issues are based were not raised in an objection at trial. Plaintiffs state that each of the issues are preserved as recorded in the trial transcript, and argue that any objection thereto "would have been meaningless, would have intensified judicial animosity, would have been viewed as a source of annoyance, would have aggravated and worsened the situation, and would have caused further damage to Plaintiffs' cross-examination and the presentation of Defendant, Barbara Sieger's verified Answer to the Interrogatory, and would have caused further

damage to Plaintiffs' counsel's credibility and perceived motives, in the eyes of the jury." Concise Statement, p. 14. Thus, Plaintiffs claim that the issues are preserved and exempted from waiver.

Despite beginning with a seven-page brief-style explanation of the issues raised, no support for this argument is included in Plaintiffs' Concise Statement. However, a review of Plaintiffs' Brief reveals two cases which address the issue of waiver: *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000) and *Commonwealth v. Hammer*, 494 A.2d 1054 (1985). Plaintiffs state, "[o]ur Supreme Court, in [*Harman*], citing its previous case of [*Hammer*], held that a matter is preserved for appeal where any further objection to the trial court's improper comments may 'have a deleterious effect on the jury or even on the judge whose behavior is extremely unprofessional.'" Plaintiffs' Brief, pp. 14-15 (citing *Harman,* 756 A.2d at 472). Additionally, Plaintiffs contend that the court held that, where it appears from all the circumstances that a timely objection to perceived judicial misconduct would be meaningless, a party may choose to raise the issue for the first time at post-trial motions to preserve it for appellate review. *Id.* at 473. Applying this holding to the instant appeal, Plaintiffs state that "given the force of the stance of the trial court on this critical evidence, objecting to this misconduct would have intensified the judicial animosity and would have aggravated and worsened the situation..." Plaintiffs Brief, p. 15.

As this holding requires that the totality of the circumstances be considered, and because Plaintiffs' Brief fails to include details regarding "this critical evidence" or "this misconduct," the court must consider each issue in the context of the record it is founded upon. Issues one through seven are based on a single interruption of Plaintiffs' counsel by the court, found in the following interaction:

| | |
|---|---|
| PLAINTIFFS' COUNSEL: | In your interrogatories, do you recall what interrogatories are, correct? |
| DEFENDANT SIEGER: | I don't understand what that means. |
| PLAINTIFFS' COUNSEL: | Okay. There are a set of written questions that you answered under penalty of law. |
| | Do you remember doing that? |
| DEFENDANT SIEGER: | I don't understand. |
| PLAINTIFFS' COUNSEL: | Okay. Do you remember? |
| DEFENDANT SIEGER: | How can I remember if I don't understand what you're talking about [?] |
| THE COURT | Explain to the witness what interrogatories are. She's not a lawyer. You are asking her about a discovery process, rules of civil procedure. You can't assume she remembers, knows, or understands something that was probably handled by counsel. |
| PLAINTIFFS' COUNSEL: | Your Honor, I have the verification to the answers to the interrogatory here. |
| THE COURT | You haven't shown it to her, haven't explained what an interrogatory is. |
| PLAINTIFFS' COUNSEL: | May I approach the witness? |
| THE COURT: | Yes. |

N.T. 5/8/17, Jury Trial -- Excerpt, pp. 14-15.[7] After this exchange, Plaintiffs' counsel continued his cross examination of Defendant Sieger uninterrupted by the court. Plaintiffs' eighth and ninth issues

---

[7] The date on this transcript is inaccurately reads, "Tuesday, May 8, 2017." May 8, 2017, was a Monday.

involve a defense objection that the court granted, and are based entirely upon the following interaction:

PLAINTIFFS' COUNSEL:   When you were asked about these conversations, you answered, defendant is uncertain, your lawyer signed these too, didn't she?

DEFENDANTS COUNSEL:   Objection.

PLAINTIFFS' COUNSEL:   That's fair.

THE COURT   Also irrelevant. Move on.

PLAINTIFFS' COUNSEL:   Okay.

*Id.* at 16. With respect to issue ten, while again addressing the interrogatory noted *supra*, Plaintiffs' counsel objected to the question, "[i]t wasn't asking about any conversation you had prior to the –," as leading, and the court responded, "I didn't think it was. Overruled." *Id.* at 28. Defendants' counsel proceeded to rephrase the question as, "[w]as [Interrogatory 41] asking you about any conversations that you had with the plaintiff prior to the incident?" *Id.* Finally, issue eleven is based upon the court's statement, "[c]ounsel, remember that these are real people. They don't speak people speak like we do," to Defendant's counsel during the re-direct examination of Defendant Siegers. *Id.*[8]

The text of *Harman* initially relied upon by Plaintiffs states, "[w]hile trial counsel has an obligation to object to improper language and/or behavior in the courtroom to effectively represent his or her client, there may be circumstances in which objections have a deleterious effect on the

---

[8] In reviewing the trial transcript before having it lodged and filed, the court failed to make a correction to this quotation, which when spoken was, "they don't speak *legal* speak like we do." (Emphasis added). The context of the court's exchange during trial and the issues which Plaintiffs contend ostensibly flow from the court's comment support, the court believes, the clarification of its words.

jury or even on the judge whose behavior is extremely unprofessional." *Harman*, 756 A.2d at 1125.[9] From that, the following three phrases are highlighted for review: "improper language and/or behavior in the courtroom;" "there may be circumstances in which objections have a deleterious effect on the jury or even on the judge;" and "whose behavior is extremely unprofessional." First, Plaintiffs are unable to establish that the court spoke or behaved improperly in the courtroom.[10] Second, the instant circumstances are wholly devoid of evidence to indicate that objections by Plaintiffs' counsel would have had a harmful or damaging effect on the jury or the court. Third, Plaintiffs constant and repetitive allegations of judicial misconduct are misrepresentations, exaggerated for post-trial proceedings, of common interactions between a trial judge and counsel, and are incapable of establishing even a modicum of unprofessionalism.

In *Harman*, a negligence action was brought against three physicians and a hospital to recover for their failure to diagnose and properly treat encephalitis and to diagnose encephalitis as a reaction to a measles, mumps, and rubella vaccination. Following a jury verdict which found that the defendants were not liable, the plaintiffs filed an appeal to the Pennsylvania Superior Court. In pertinent part, the Superior Court ruled that the trial court erred in denying the plaintiffs' motion for a mistrial after the trial court engaged in an off-the-record discussion with an expert defense

---

[9] The court notes the inclusion of the phrase "further objection" which preceded this text in Defendants' Brief. As the *Harman* decision addresses circumstances where no objection is needed for proper preservation of an issue, Plaintiffs paraphrasing of the holding would add a hurdle not included in the decision. Fortunately for Plaintiffs, they need not overcome this mistaken, and self-inflicted, *Harman* requirement.

[10] This conclusion is expanded upon *infra*.

witness in the presence of the jury. While maintaining that a failure to immediately object to judicial misconduct does not result in waiver if a timely objection would be meaningless under the circumstances, the Supreme Court reversed the Superior Court's decision, finding that the record supported the trial court's reasoning in denying the motion, and thus the trial court did not abuse its discretion.

Despite finding that the trial court did not abuse its discretion, *Harman* extended the limited exception to the waiver doctrine established in *Hammer* to both criminal and civil cases.[11] Discussing the *Hammer* decision, the court noted that the *Hammer* trial court "acted in a manner assured to cast a shadow of bias in the courtroom," explaining that, "[a]mong other prejudicial conduct, the trial court repeatedly interrupted defense counsel during his direct examination of the defendant and defense witnesses to ask prosecutorial-style questions, failed to rule on defense objections, and bolstered the Commonwealth's case with his comments and questions." *Harman*, 756 A.2d at 1125 (citing *Hammer*, 494 A.2d at 1061-64). Later, the *Harman* court indicated that it was apparent that a timely objection could have annoyed the trial court and worsened the situation in *Hammer*, and stated:

> The [*Hammer*] defendant provided numerous examples in the record of behavior that demonstrated a possible bias against him. Furthermore, the defendant offered specific instances in the record when the trial court judge failed or refused to respond to defense counsel's objections or overruled them in a cavalier manner.

---

[11] While *Hammer* was abrogated by *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), which held that a defendant should wait to raise claims of ineffective assistance of trial counsel until collateral review, the court's prejudicial misconduct analysis is unaffected.

*Harman*, 756 A.2d at 1125-26. However, ultimately, the court determined that the circumstances in *Harman* did not arise to the level of *Hammer*, despite stating that there is no disagreement that the *Harman* trial court made a mistake.

The crux of the *Harman* appeal was the effect on the jury of a private discussion between the trial court judge and a defense expert witness, which occurred off-the-record, out of the range of hearing of the jury and had no relevance to the trial, after the trial court judge announced in open court that he wished to speak with the defense witness, while noting that the conversation had nothing to do with the case. *Harman*, 756 A.2d at 1120. Having failed to immediately object to this conversation, plaintiffs' counsel approached the trial court judge after the court reconvened following the lunch break recess, objected to the judge's discussion with the witness, and moved for a mistrial. *Id.* The objection was overruled and the motion for a mistrial was denied. *Id.*

In determining whether it was an abuse of discretion for the trial court to deny the motion for a new trial, the Pennsylvania Supreme Court asked, "[d]id the trial court judge create an appearance of partiality when he conferred with [the defense expert witness] off the record in the presence of the jury?" and, "[i]f there were an appearance of partiality that could have had a prejudicial effect on the jury's deliberations, did the trial court take satisfactory action to render the error harmless?" *Harman*, 756 A.2d at 1124. Ultimately, the court determined that plaintiffs' counsel's excuse at trial for failing to raise an immediate objection lacked justification,[12] and that

---

[12] *See Harman* at 1126 ("When asked by the trial court why counsel did not take prompt action, counsel explained that he did not want to draw further attention to the conversation").

12

on appeal plaintiffs failed to disclose facts to show that a timely objection would have been meaningless or caused greater harm to their case, explaining that "[t]here is simply no evidence that the trial court expressed any bias against the [plaintiffs] or their counsel during the trial." *Id.* at 1126. Continuing, the court stated, "[t]he preferred course of action would have been for counsel to move for a prompt sidebar discussion with the judge to alert the trial court to what he perceived as on-going prejudicial behavior." *Id.*

Upon review of the instant case, it cannot be said that the circumstances arise to either the level of *Harman* or *Hammer*. With respect to Plaintiffs' argument, the court concludes that "this critical evidence" likely refers to Interrogatory Number 41, and "this misconduct" likely refers to the two clarifying comments made by the court during Defendant Sieger's testimony. Comparing the *Harman* and *Hammer* decisions to Plaintiffs' excuse for failing to raise an objection in this case, the court concludes that Plaintiffs are unable to demonstrate that lodging a timely objection would have been meaningless.

"It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motion." *Harman*, 756 A.2d at 1124. Requiring timely, specific objection during trial ensures that the trial court has an opportunity to correct the alleged trial error. *See Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116 (1974). "Waiver is indispensable to the orderly functioning of our judicial process and developed out of a sense of fairness to an opposing party and as a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues which the appealing

13

party has failed to preserve." *Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority*, 489 A.2d 1291, 1300 (Pa. 1985). While a party who perceives judicial misconduct may decide to raise an issue for the first time in a post-trial motion to preserve it for appellate review, this decision "involves some risk, which a trial counsel should not assume lightly." *Harman*, 756 A.2d at 1126. "The burden is on the party asserting the *Hammer* exception to the waiver doctrine to demonstrate that lodging a timely objection would have been meaningless," and "[a]n objection would not be meaningless merely because the judge is likely to overrule it." *Id.*

The limited exception to the waiver doctrine established in *Hammer*, and extended in *Harman*, cannot apply in Plaintiffs' case, given the instant circumstances. This limited exception, which should apply to strategic decisions made at trial, is not intended as a hindsight excuse for trial mistakes or a catchall method for disputing unfavorable outcomes. Permitting Plaintiffs to rely upon it in the instant circumstances would essentially abolish the waiver doctrine altogether. Moreover, allowing Plaintiffs to circumvent the requirement that a timely and specific objection be made to preserve an issue for review because of two clarifying comments and one overruled objection would open the floodgates to an insurmountable number of frivolous appeals, while severely inhibiting the discretion which trial courts are afforded.

Ultimately, Plaintiffs attempt to justify their improperly preserved claims is unsuccessful, as outside of their bald (and when read in the context of the transcript as a whole, overstated) assertions, there is nothing to establish that timely objections may have had a deleterious effect on the jury or court, or would have been meaningless at trial. Like *Harman*, there is simply no evidence that the

14

court expressed any bias against Plaintiffs or their counsel during the trial. Thus, because the eleven issues raised in Plaintiffs' Motion and Plaintiffs' Concise Statement were not properly preserved for appellate review, the court respectfully submits that they be deemed waived.

3.  <u>Were the newly-raised issues in Plaintiffs' Concise Statement properly preserved for review?</u>

With respect to preservation of post-trial issues, and in addition to the rules discussed *supra*, Pennsylvania Rule of Civil Procedure 227.1(b) provides that post-trial relief may not be granted unless "the grounds therefor are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." Pa.R.C.P. 227.1(b). "[T]his is not blind insistance [sic] on a mere technicality since post-trial motions serve an important function in adjudicatory process in that they afford the trial court in the first instance the opportunity to correct asserted trial error and also clearly and narrowly frame issues for appellate review." *Fernandes v. Warminster Mun. Auth.*, 442 A.2d 1174, 1175 (1982). "Even when a litigant files post-trial motions but fails to raise a certain issue, that issue is deemed waived for purposes of appellate review." *Diamond Reo Truck Co. v. Mid-Pacific Industries, Inc.*, 806 A.2d 423 (Pa. Super. 2002).

Plaintiffs have waived issues twelve and thirteen because they were not raised in Plaintiffs' Motion. While the question of preservation with respect to these issues presents a challenge, as the grounds upon which they are based involve the court's actions after Plaintiffs' Motion was filed, Plaintiffs have provided no support for their inclusion and the court's independent research has yielded nothing which dictates their allowance. Moreover, because the instant appeal is of the court's denial of

15

3. By interrupting Plaintiffs' counsel's cross examination of Defendant, Barbara Sieger, without objection, and instructing Plaintiffs' counsel to explain and/or continue to explain after explanation, to Defendant, Barbara Sieger, her Interrogatories and her previously verified Answers to such Interrogatories, where Defendant's Answer to an Interrogatory contained therein was in conflict with Defendant's trial testimony on the core issue of her communications with Plaintiffs;[14]

4. By interrupting Plaintiffs' counsel's cross examination of Defendant, Barbara Sieger, without objection, and stating that you can't assume that Defendant, Barbara Sieger, understood what she previously answered in the verified Answer to Interrogatory, where that Answer to Interrogatory was in conflict with Defendant's trial testimony on the core issue of her communications with Plaintiffs;[15]

5. By interrupting Plaintiffs' counsel's cross examination of Defendant, Barbara Sieger, without objection, and stating that you can't assume that Defendant, Barbara Sieger, knew of her verified Answer to the aforesaid Interrogatory, where that Answer to Interrogatory was in conflict with Defendant's trial testimony on the core issue of her communications with Plaintiffs;

6. By interrupting Plaintiffs' counsel's cross examination of Defendant, Barbara Sieger, without objection, and stating that you can't assume that Defendant, Barbara Sieger, knows of or understands her verified Answer to the aforesaid Interrogatory as her Answers to Interrogatories were probably handled by counsel, where that Answer to Interrogatory was in conflict with Defendant's trial testimony on the core issue of her communications with Plaintiffs;

---

[14] Issue three states that this caused prejudice to Plaintiffs, including but not limited to, "suffering an attack on the reliability of Defendant's Answer to this Interrogatory, calling into question the Answer to this Interrogatory and/or excusing Defendant, Barbara Sieger Answer to this Interrogatory, by virtue of the need to explain and ostensibly cure her lack of understanding of the same." Concise Statement, p. 7. Additionally, this prejudice includes the "impairment of the substance of Defendant's Answer to this Interrogatory and the impairment of the impeachment of Defendant by her Answer to this Interrogatory, and calling into question Plaintiffs' counsel's credibility and motives for attempting to use this Answer to Interrogatory, under these circumstances." *Id.*

[15] Issues four through eleven all state this this caused prejudice to Plaintiffs "by impairing, questioning and/or excusing the substance of Defendant's Answer to this Interrogatory and the impairing the impeachment of Defendant by her Answer to this Interrogatory, and calling into question Plaintiffs' counsel's credibility and motives for attempting to use this Answer to Interrogatory, under these circumstances." Concise Statement, pp. 8-13.

17

7. By interrupting Plaintiffs' counsel's cross examination of Defendant, Barbara Sieger, without objection, and stating that you can't assume that Defendant, Barbara Sieger, understood her verified Answer to the aforesaid Interrogatory because she's not a lawyer, and that Plaintiffs' counsel is asking her about a discovery process, rules of civil procedure, where that Answer to Interrogatory was in conflict with Defendant's trial testimony on the core issue of her communications with Plaintiffs;

8. By granting an unspecified defense objection to Plaintiffs' counsel's question as to whether the defense attorney's signature was on this Answer to Interrogatory and openly declaring the same to be irrelevant, where that Answer to Interrogatory was in conflict with Defendant, Barbara Sieger, trial testimony on the core issue of her communications with Plaintiffs;

9. By demanding that Plaintiffs' counsel "move on" from the cross-examination of Defendant, Barbara Sieger, on her verified Answer to the aforesaid Interrogatory, where that Answer to Interrogatory was in conflict with Defendant, Barbara Sieger, trial testimony on the core issue of her communications with Plaintiffs;

10. By during defense counsel's re-direct of Defendant, Barbara Sieger, on her verified Answer to the aforesaid Interrogatory, overruled Plaintiffs' counsel's objection to defense counsel's leading question to what the witness understood concerning her Answer to this Interrogatory, where that Answer to Interrogatory was in conflict with Defendant, Barbara Sieger, trial testimony on the core issue of her communications with Plaintiffs; and

11. By stating during defense counsel's re-direct of Defendant, Barbara Sieger, regarding her Answer to the aforesaid Interrogatory that was in conflict with Defendant's trial testimony on the core issue of her communications with Plaintiffs, "Counsel, remember that these are real people. They don't speak people speak like we do."[16]

Concise Statement, pp. 7-13. Plaintiffs argue that each issue, "individually and/or aggregately,"

was/were misleading to the jury, created jury prejudice, prevented a fair and unbiased trial, was

---

[16] *See* note 8, *supra*.

harmful, was reversible error(s), influenced and/or may have influenced the jury's verdict in this case," while depriving Plaintiffs of their constitutionally guaranteed rights to cross-examination. *Id.* at 12-13.

The eleven issues, as well as the various sub-issues and allegations contained within them, will be considered in three parts. First, the court will address issues one through seven, as they all pertain to a single interruption of Plaintiffs' counsel by the court. Next, the court will address issues eight and nine, which involve a defense objection during Plaintiffs' cross examination of Defendant Sieger. Finally, the court will address issues ten and eleven, as both involve the re-direct examination of Defendant Sieger.

The decision to grant a new trial in within the discretion of the trial court, and "[a] new trial is warranted when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). A trial court must follow a two-step process when considering a request for new trial: "[f]irst, the trial court must decide whether one or more mistakes occurred at trial" and second, "if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial."[17] *Harman*, 756 A.2d at 1121-22. Mere irregularities during a trial, or the fact that another judge may have ruled differently, are insufficient to warrant a new trial, as "the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Id.*

---

[17] Mistakes might involve factual, legal, or discretionary matters, and the "harmless error doctrine" underlies every court's decision to grant or deny a new trial. *Harman*, 756 A.2d at 1122.

An appellate court's standard of review upon a trial court's denial of a motion for new trial "is limited to a determination of whether the trial court committed an error of law that controlled the outcome of the case, or committed an abuse of discretion." *Exec. Risk Indem. v. Cigna Corp.*, 74 A.3d 179, 182 n. 5 (Pa. Super. 2013)(citations omitted).[18]

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the judgment is the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Fanning v. Davne*, 795 A.2d 388, 393 (Pa. Super.2002). New trials based upon a claim that the trial court was unfair in its remarks, rulings, and charge "should be avoided unless the errors complained of are plainly prejudicial to one of the parties; harmless errors can never be the basis for them." *Fischer v. Commercial Nat'l Bank*, 184 A. 57 (1936). A reviewing court will not reverse a lower court's refusal to grant a new trial unless there is a "palpable abuse of discretion," and "[a] rightful exercise of discretion is presumed unless the contrary plainly appears." *Id.* "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." *Harman*, 756 A.2d at 1123 (quoting *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1187 (1993)). "In considering whether the record supports the trial court's decision, the appellate court is to defer to the judgment of

---

[18] *See also Harman*, 756 A.2d at 1121-22 ("[I]t is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial").

the trial court, for the trial court is uniquely qualified to determine factual matters." *Morrison v. Com., Dept. of Public Welfare*, 646 A.2d 565, 571 (Pa. 1994).

Initially, the court notes that seven of the issues raised are based upon the same answer to an interrogatory, and the testimony from Defendant Sieger which applied to it. Plaintiffs contend Defendant Sieger's answer to Interrogatory 41 conflicted with her trial testimony on "the core issue of her communications with the Plaintiffs." Concise Statement, pp. 8-14 (paragraphs 3-8, 10-11). The alleged discrepancy between Defendant Sieger's verified answer to Interrogatory Number 41, and her testimony with respect to it at trial, is the essence of Plaintiffs' entire appeal.

Interrogatory Number 41 stated, "...if you [e.g., Defendant Sieger] and Plaintiff had a conversation from the time of the accident until the present, please state the substance of any and all such conversations." Concise Statement, p. 3. In response to this interrogatory, Defendant Sieger answered that she was uncertain as to these conversations. *Id.* Plaintiffs believe that this answer is contradictory to Defendant Sieger's trial testimony that she had conversations with both Plaintiff Becky Reever and Plaintiff James Reever, informing them specifically of how she was going to operate the vehicle during the test drive, and that they consented to the demonstration. Plaintiffs argue that, by informing the jury that Defendant Sieger previously answered that she was uncertain as to her conversations with Plaintiffs, they could have established that Defendant Sieger's previous answer was the "correct and honest answer," and that Defendant Sieger "had no recollection of communicating to [Plaintiffs] how she was going to conduct this demonstration nor any recollection that Plaintiffs consented to the demonstration." *Id.* at 4. As such, Plaintiffs contend that Defendant Sieger's credibility

21

would have been impeached, and a "main-central defense of [Defendants]" would have been severely damaged. *Id.* at 3-4.

However, the court disagrees with this misconstrued interpretation, and ultimately concludes that Plaintiffs' argument is fatally flawed because the cross-examination question at issue received a truthful and accurate answer at trial. The period of time expressed in Interrogatory Number 41 does not align with the period of time expressed in Plaintiffs' question at trial, as Interrogatory 41 addressed conversations which occurred "from the time of the accident until the present," while Plaintiffs' examination asked about conversations which occurred from Plaintiffs arrival at Defendants' dealership to the time of the alleged incident.[19] Defendant Sieger's answer to Interrogatory 41 was directed towards conversations from the point at which the incident occurred to the point at which Defendant Sieger answered Interrogatory Number 41; not conversations which occurred up to the incident. Defendant Sieger's uncertainty surrounding post-incident conversations has no impact on the truthfulness and accuracy of her testimony that she specifically warned Plaintiffs of how she intended to drive during the demonstration and that she received their consent to proceed accordingly.

As such, seven of the eleven issues raised (*e.g.*, issues 3-8 and 10-11) are founded upon Plaintiffs' misinterpretation, dispelling the likelihood of mistake and negating any possibility of prejudice. Because the moving party must demonstrate that one or more mistakes occurred at trial, and that prejudiced was suffered from it, Plaintiffs' claims regarding Interrogatory Number 41 are

---

[19] Additionally, Plaintiffs' argument unreasonably expands the context of Defendant Sieger's answer, as the court cannot conclude that being "uncertain" is the same as having "no recollection." is fatally flawed because it both unreasonably expands the context of Defendant Sieger's answers and misinterprets the question at issue.

meritless. However, since Plaintiffs' convoluted Concise Statement raises a variety of claims with a range of prejudices, the court will briefly consider the merits of each issue.

## A. Issues One Through Seven.

With respect to issues one through seven, "[c]onversing with witnesses is a discretionary power of trial courts." *Harman,* 756 A.2d at 1124. Here, the court's "interruption" of Plaintiffs' counsel's cross-examination was merely an attempt to clarify for the witness the question being asked, and is far from an abuse of discretion or an error of law. While Plaintiffs state that the court "intentionally and critically undermined the reliability of Defendant, Barbara Sieger's Answer to this Interrogatory," the subsequent attempts to support this statement are simply inaccurate. *See* Plaintiffs' Brief, p. 9. Asserted in numerous ways, Plaintiffs argue that the court told the jury that Defendant Sieger did not understand or know of her answer to the interrogatory, and as such could not be held to her answer. Again, Plaintiffs misrepresent the situation to bolster their claims, as it was not a matter of whether Defendant Sieger remembered what she answered in the interrogatory, but whether Defendant Sieger understood what an interrogatory was in general. At no point did the court make any statement, whether direct or indirect, which would lead the jury to believe otherwise.

Upon reviewing the record, and recollecting upon the reasoning behind its decision at trial, the court is satisfied that, its "interruption" of Plaintiffs' counsel's cross examination of Defendant Siegers was well within its sound discretion, and thus, there exists no abuse of discretion or error of law with respect to these claims. Therefore, Plaintiffs' first through seventh issues, even if not waived, would fail.

23

## B. Issues Eight and Nine

Similarly, the exchange at the foundation of issues eight and nine is so categorically common that the court's conclusion that the issues fail to establish an abuse of discretion or an error of law requires little explanation. However, three things are particularly noteworthy here. First, Plaintiffs' counsel's immediate reaction to the objection was "that's fair," and thus, it could be concluded that the objection, which the court never expressly sustained, was withdrawn. Second, arguing that both the "unspecified" nature of the objection, and the court's specification for the record of the ground upon which the objection had merit, caused extreme prejudice is contradictory. Third, alleging that the court acted manifestly unreasonable and committed error of law while being motivated by partiality, prejudice and bias, because it requested that Plaintiffs' counsel "move on" after an objection is trivial and sophistic. Ultimately, issues eight and nine are far closer to frivolous than meritorious.

Upon reviewing the record, and based upon the reasoning behind its decision at trial, the court is satisfied that there exists no error of law or abuse of discretion with respect to its statement, "[a]lso irrelevant. Move on." Therefore, Plaintiffs' eighth and ninth issues, even if not waived, would fail.

## C. Issues Ten and Eleven

As to issues ten and eleven, Plaintiffs contend first that the court inaccurately overruled Plaintiffs' counsel's objection, and second, that the court erroneously commented during the re-direct of Defendant Siegers. With respect to Plaintiffs' counsel's objection, the court maintains its position that the question at issue was not a leading question. Additionally, the question which followed the overruled objection was re-phrased. As a result, even if the objection should have been sustained, no prejudice resulted.

With respect to the court's interjection, like its explanation for issues one through seven, conversing with witnesses is a discretionary power of the trial court, and the court was again merely attempting to clarify the question being asked. While the specific phrase at issue reads awkwardly on the transcript,[20] and the court does not recall the language it used at trial verbatim, the intent behind its statement was to remind counsel that, typically, lay witnesses are not privy to the vernacular which may be common to those in the legal profession. Clarifying that a witness need not fully understand the legal terminologies in a question asked cannot be considered impairing, questioning or excusing the substance of answer given. Moreover, the statement at issue was directed at Defendants' counsel. The court struggles to see how it relates to Plaintiffs' counsel's credibility and motives.

Again, upon reviewing the record, and based on the rationale behind its decision to overrule Plaintiffs' objection, and its reasons for clarifying Defendants' question, the court is satisfied that there exists no error of law or abuse of discretion with respect to the re-direct examination of Defendant Siegers. Therefore, Plaintiffs' tenth and eleventh issues, even if not waived, would fail.

## 2. Newly Raised Issues on Appeal

Plaintiffs' Concise Statement raises two new issues, which both allegedly further confirm and corroborate the bias, partiality, and prejudice discussed *supra*. Issue twelve claims that the trial court's "refusal" to rule on Plaintiffs' Motion deprived Plaintiffs of their post-trial rights afforded by Pa. R.C.P. 227.1. Issue thirteen asserts that the trial court's "ordering and/or affording" the right to Defendants to file an answer to Plaintiffs' Concise Statement is in violation of Pa.R.A.P. 1925(b).

---

[20] *See* note 8, *supra*.

25

### A. Issue Twelve

Plaintiffs twelfth issue argues that the trial court's refusal to rule on Plaintiffs' Motion deprived Plaintiffs of the post-trial rights afforded by Pa. R.C.P. 227.1, while further evidencing bias and partiality and causing prejudice to Plaintiffs' rights. The court disagrees.

Pa. R.C.P. 227.1(a)(1) states that, after trial, and upon the written Motion for Post-Trial Relief filed by any party, the court may order a new trial as to all or any of the issues. Rule 227.4(1)(b) addresses instances in which a court may be unable to swiftly decide certain post-trial motions, and states, "the prothonotary shall, upon praecipe of a party...one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion." Pa. R.C.P. 227.4(1)(b). A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration; In clarifying Rule 227.4(1)(b), the Pennsylvania Superior Court stated, "[t]he Rules of Civil Procedure governing post-trial practice were amended to allow the parties to minimize post-trial delay." *Conte v. Hahnemann University Hosp.*, 707 A.2d 230 (Pa. Super. 1998) "Rule 227.4(1)(b) is optional with the parties; they may await the decision of the trial court or move the case along." *Id.*[21]

The instant issue is completely meritless, and includes no support for its constrained interpretation of Pa. R.C.P. 227.1. Plaintiffs' Motion was denied by operation of law on or about October 25, 2017, when Plaintiffs' file a *praecipe* for entry of judgment with the Lancaster County Prothonotary, and thus, any argument that it was not ruled upon is inaccurate. Moreover, any

---

[21] *See also* Pa.R.C.P. 227.1 (Explanatory Comment – 1995).

26

suggestion that the court intentionally refused to rule on Plaintiffs' Motion is totally unfounded. Again, the contradictory nature of Plaintiffs' issue and argument is evident, since Plaintiffs' exercising of the Rule 227.1 option to file a *praecipe* negates the prejudice alleged. While cases may exist where a court might consider the impact of some extreme delay, such is not the case here, as any post-trial delay in the instant case is merely the result of the numerous, elongated claims raised in Plaintiffs' Motion. Exercising their option to move the case along, only to claim the court refused to make a ruling out of bias, partiality and prejudice, is either indicative of Plaintiffs' misunderstanding of the law or animosity toward the court arising from the jury's verdict.

Thus, upon reviewing the record and the rationale behind Rule 227.1, and considering Plaintiffs' decision to file a *praecipe* for entry of judgment, the court is satisfied that the denial of Plaintiffs' Motion by operation of law is neither an abuse of discretion nor an error of law. Therefore, Plaintiffs' twelfth issue, even if properly raised on appeal, would fail.

## B. Issue Thirteen

Plaintiffs' thirteenth issue argues that the court's Order of November 28, 2017, is in violation of Pa. R.A.P. 1925(b) and is further evidence and corroboration for the alleged bias, prejudice and partiality of the trial court. The court disagrees.

As indicated *supra*, Pa. R.A.P. 1925(b) states, "[i]f the judge entering the order giving rise to the notice of appeal desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal." Rule 1925(b)(4)(iii) indicates, in pertinent part, that a judge shall not require that an appellee file a response in conjunction with an appellant's concise statement.

27

court actions now at issue caused any prejudice to Plaintiffs. All claims that the court was motivated by, and acted with, partiality, prejudice and bias are both unfounded and unsupported by the record. Ultimately, Plaintiffs are completely incapable of establishing that the jury's verdict was "so contrary to the evidence that it shocks one's sense of justice."

For the foregoing reasons, it is respectfully suggested that Defendant's appeal be denied.

ATTEST:

**BY THE COURT:**

/s/ Margaret C. Miller
**MARGARET C. MILLER
JUDGE**

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THE CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE:

29